UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MJM VISIONS, LLC, individually and on
behalf of all others similarly situated,

                Plaintiff,                            MEMORANDUM AND ORDER
                                                                    18-CV-04452

   - against -

CSC SERVICEWORKS, INC., a Delaware
corporation,

                Defendant.
------------------------------------------------------------x
GLASSER, Senior United States District Judge:

      Plaintiff MJM Visions, LLC ("Plaintiff" or "MJM") brings this putative class action against Defendant CSC Serviceworks, Inc. ("Defendant" or "CSC") alleging breach of contract and unjust enrichment. (ECF No. 1 "Complaint"). Pending before the Court is CSC's Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, to strike Plaintiff's class allegations pursuant to Rules 12(f) and 23 of the same. (ECF No. 15). For the reasons explained below, Plaintiff's action is not ripe for adjudication and CSC's motion is **GRANTED**.

## BACKGROUND

      CSC is a Delaware corporation with its principal place of business in Plainview, New York, and provides coin-operated laundry machines to universities, laundromats, and residential multi-unit buildings. (Complaint ¶ 11). Over the last several years, CSC has acquired many of its competitors and their pre-existing service contracts, some of which are in the form of leases where CSC rents building space for its laundry machines and pays the landlords of those buildings a share of the net revenue generated by the machines. (*Id.* at ¶¶ 12-16).

Plaintiff owns multi-unit apartment buildings in California and is a party to three lease agreements with one of CSC's predecessors, Coinmach. (*Id.* at ¶ 28-29). Those agreements provide that Coinmach, now CSC, will pay Plaintiff an annual rent equal to 20 dollars or 50 percent of the gross monthly receipts from the laundry machine sales, whichever is greater. (*See* Exhibits 1-A, 1-B, 1-C). In addition, the agreements include a notice-and-cure provision, which provides

> Lessee shall be in default if it fails to perform any of its obligations under the lease. On default, lessor may give lessee a written notice describing the default. Lessee shall have thirty (30) days from the receipt of the written notice in which to cure the default described in the notice. If lessee fails to cure that default within the thirty (30) day period, then lessee will be in breach of this lease. Lessee will not be in breach of this lease unless lessee received a written notice from lessor and failed to cure the described default within thirty (30) days, all as provided above.

(*Id.*)

On May 17, 2017, CSC wrote to Plaintiff announcing that, going forward, it will deduct an "Administrative Fee" of 9.75% from Plaintiff's gross collections. (Exhibit 1-D). It claimed that the fee will help "offset costs related to taxes, vandalism, and applicable administrative and other costs." (*Id.*). Plaintiff claims that none of its leases with CSC allow for such a fee, which resulted in loss to it of hundreds of dollars in revenue. (Complaint ¶¶ 32-34).

On August 7, 2018, Plaintiff filed a complaint on behalf of itself and other similarly situated landlords who were charged the 9.75% Administrative Fee. Approximately one month later, on September 6, 2018, CSC wrote to Plaintiff stating that (1) under the lease agreements, Plaintiff was required to provide CSC with notice of the alleged breach and a 30-day opportunity to cure it before filing suit, (2) while CSC believes it is permitted to deduct the Administrative Fee, it nevertheless reimbursed Plaintiff for the fees it collected up to that point, and (3) CSC would not deduct the Administrative Fee for the remainder of the leases' terms. (Exhibit 1-E). Plaintiff neither cashed CSC's reimbursement checks nor responded to CSC's letter.

**LEGAL STANDARD**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). On a "defendant's Rule 12(b)(1) motion to dismiss, . . . [t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Tranp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). "[A] district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." *Id.* (internal quotation omitted).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In deciding a Rule 12(b)(6) motion, the Court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in its favor. *ATSI Commc'ns, Inc. v. Shaar Fund, LTD.*, 493 F.3d 87, 98 (2d Cir. 2007). The Court may consider, in addition to the facts stated in the complaint, "any written instrument attached to the complaint," as well as "documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *Id.*

**DISCUSSION**

CSC argues that the Court does not have subject matter jurisdiction over Plaintiff's claims because they are not ripe for adjudication. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The ripeness

doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). This doctrine "prevents a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur." *Ross v. Bank of Am., N.A. (USA)*, 524 F.3d 217, 226 (2d Cir. 2008). Under Article III limitations, ripeness overlaps with standing, and alleging an injury-in-fact typically means that the claim is ripe for review. *Id.* However, under prudential considerations, a court may decide that a case is not ripe when it would "be better decided later" and "the parties will not have constitutional rights undermined by the delay." *Simmonds v. INS*, 326 F.3d 351, 357 (2d Cir. 2003). The "fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration must inform any analysis of ripeness." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985).

CSC argues that because Plaintiff did not provide it with notice of breach and an opportunity to cure, a condition precedent to filing suit, this action is not ripe for review. When a plaintiff fails to satisfy a condition precedent to suit, the plaintiff's claims are not ripe for adjudication. *Sirob Imports, Inc. v. Peerless Ins. Co.*, 958 F. Supp. 2d 384, 389 (E.D.N.Y. 2013), *aff'd*, 558 F. App'x 32 (2d Cir. 2014); *MBIA Inc. v. Certain Underwriters at Lloyd's, London*, 33 F. Supp. 3d 344, 356 (S.D.N.Y. 2014). In accordance with the choice of law provision in the parties' lease agreements, the Court will apply California law to determine whether the notice-and-cure provision was intended to serve as a condition precedent to filing suit.

When a court interprets a contract, the goal is to discern and enforce the parties' mutual intent at the time the contract was formed. *Thor Seafood Corp. v. Supply Mgmt. Servs.*, 352 F. Supp. 2d 1128, 1131 (C.D. Cal. 2005) (citing Cal. Civ. Code § 1636). "[T]he intention of the

4

parties is to be ascertained from the writing alone, if possible." Cal. Civ. Code § 1639. If contractual language is clear and explicit, the plain meaning governs unless it results in an absurdity. *Id.* at § 1638. The words of a contract are to be understood in their "ordinary and popular sense" and the contract should be considered as a whole "so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." *Id.* at §§ 1644, 1641.

Plaintiff argues that because the notice-and-cure provision provides that the "lessor *may* give lessee a written notice describing the default," it had the option to provide notice of the breach, but it was not required to do so. CSC argues that because the agreement provides that "lessee will not be in breach of this lease *unless* lessee received a written notice from lessor and failed to cure the described default within thirty (30) days," written notice was required. It further argues that even if Plaintiff was not required to provide notice of a "default" by CSC, the language is clear that CSC cannot be sued for breach unless it was provided first with notice and a 30-day opportunity to cure. Plaintiff claims that, at best, the notice-and-cure provision is ambiguous and the Court cannot ascertain the parties' intent at this stage of the litigation.

Contracts are to be considered as whole and their language interpreted in context. *RBB2, LLC v. CSC ServiceWorks, Inc.*, No. 1:18-CV-00915 (LJO), 2019 WL 1170484, at *5 (E.D. Cal. Mar. 13, 2019) (citing Cal. Civ. Code § 1641).[1] Having reviewed the notice-and-cure provision

---

[1] Plaintiff submitted the court's opinion in *RBB2, LLC v. CSC ServiceWorks, Inc.*, No. 1:18-CV-00915 (LJO), 2019 WL 1170484 (E.D. Cal. Mar. 13, 2019) as supplemental authority to support its argument that its claims are ripe for adjudication. However, the notice-and-cure provision at issue in that case is plainly distinguishable. There, the agreement provided:

> Either party may terminate this Agreement and recover damages, including but not limited to incidental and consequential damages if: a) The other party commits any material breach of this Agreement which is not capable of being remedied; or b) The other party commits a breach of this Agreement which is capable of being remedied and fails to remedy the breach within 30 days after receipt of written notice of the default or within such longer period as may be specified in the notice

5

in context, it is clear that while Plaintiff need not give CSC notice of every perceived default under the lease, CSC cannot be sued for breach of the lease unless it is provided first with notice and an opportunity to cure. Considering the lease as a whole and given that the purpose of including the notice-and-cure provision was to prevent litigation by providing CSC an opportunity to cure, the Court finds that Plaintiff failed to comply with a condition precedent in the lease agreements and its claims are dismissed.

## CONCLUSION

Accordingly, for the reasons set forth above, Plaintiff's action is not ripe for adjudication and CSC's motion to dismiss for lack of subject matter jurisdiction is **GRANTED**.

SO ORDERED.

Dated: Brooklyn, New York
June 12, 2019

---

of default. The prevailing party shall be entitled to recover all costs and reasonable attorney's fees incurred to enforce the Lease.

The Court considered the context of the notice-and-cure provision and reasoned that it "centers around the contours of the termination remedy" and only applies when either party seeks to terminate the Agreement and recover damages. *CSC ServiceWorks, Inc.*, 2019 WL 1170484, at *5. Because the plaintiff was not seeking to terminate the agreement, the notice and cure provision was inapplicable. *Id.* at *4.

To the contrary, the notice-and-cure provision at issue in a nearly identical claim against CSC in this Court, 18-CV-4068 (NGG) (RML), provides:

> NOTICE OF DEFAULT. Each party agrees that it will notify the other in writing by certified mail, return receipt requested, of any claimed breach of this Lease. Each party further agrees not to declare the other in default of any of the terms or conditions of this Lease unless the party who has received notice of any claimed breach fails to commence to cure the claimed breach within Sixty (60) days after receiving said notice.

While drafted differently than the provision at issue here, the intent of the parties' remains the same.

/s_____
I. Leo Glasser					U.S.D.J.